# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 16-0593V
### Filed: August 28, 2019

* * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| JEFFREY SCHAFER, * | |
| * | |
| Petitioner, * | |
| v. * | Vaccine Act; Fact Ruling; |
| * | Six Month Residual Requirement; |
| SECRETARY OF HEALTH * | Influenza (Flu) Vaccine; Shoulder |
| AND HUMAN SERVICES, * | Injury Related to Vaccine Administration |
| * | (SIRVA); Special Processing Unit (SPU) |
| Respondent. * | |
| * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

*Richard Gage, Richard Gage, P.C., Cheyenne, WY,* for petitioner.
*Jennifer Leigh Reynaud, U.S. Department of Justice, Washington, DC,* for respondent.

## ORDER DENYING RESPONDENT'S MOTION TO DISMISS AND FACT RULING ON SIX MONTH REQUIREMENT[1]

**Dorsey,** Chief Special Master:

On May 19, 2016, Jeffrey Schafer ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act").  Petitioner alleges that he suffered a right shoulder injury as a result of an influenza ("flu") vaccine administered to him on October 15, 2014.[3]  The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] The petition alleges that petitioner received his flu vaccination on October 6, 2014. However, petitioner's exhibit 6 from Walgreens Pharmacy indicates that petitioner received the vaccine on October 15, 2014.

After a review of the petition and supporting documents, respondent filed his Rule 4(c) report contesting entitlement and motion to dismiss ("Motion to Dismiss" or "Motion"), asserting that petitioner had not established that he suffered from the residual effects of his alleged vaccine-related injury for more than six months after vaccination as required by the Vaccine Act.  Motion to Dismiss (ECF No. 30).  Petitioner filed a response to the Motion to Dismiss as well as a supplemental affidavit in which he explained the reason he failed to continuously seek treatment for his injury.  (ECF Nos. 33-34).  Respondent's Motion was denied and petitioner was ordered to file an expert opinion.  (ECF No. 36).

After reviewing petitioner's expert report, on May 9, 2019, respondent filed a Renewed Motion to Dismiss ("Renewed Motion") reasserting that petitioner had failed to establish that petitioner suffered the residual effects of his alleged vaccine-related injury for more than six months after vaccination.  (ECF No. 54).  For the reasons discussed herein, respondent's Renewed Motion is **<u>DENIED</u>**.

## I.      Procedural History

On May 19, 2016, petitioner filed a petition alleging that a flu vaccine he received on October 15, 2014 caused him to suffer a right shoulder injury.  (ECF No. 1).  On July 10, 2017, respondent filed his Rule 4(c) report contesting entitlement and Motion to Dismiss arguing that the evidence does not support a finding that petitioner suffered the residual effects of his alleged injury for more than six months after administration of the vaccine, or that treatment of petitioner's alleged vaccine-related injury resulted in inpatient hospitalization and surgical intervention.  (ECF No. 30).  Respondent concluded that petitioner is unable to fulfill the requirements of 42 U.S.C. § 300aa-11(c)(1)(D) and that his petition must be dismissed.  *Id.*

Petitioner filed a response to the Motion to Dismiss ("Petitioner's Response") as well as a supplemental affidavit on August 29, 2017.  (ECF Nos. 33-34).  In the supplemental affidavit, petitioner explained why he did not seek medical treatment for his right shoulder in the 21 months following his final physical therapy session in March 2015.  (ECF No. 33).

On March 8, 2018, the undersigned issued an Order Denying Respondent's Motion to Dismiss and Scheduling Order ("March 8, 2018 Order").  (ECF No. 36). Noting that petitioner's supplemental affidavit called into question whether his early shoulder symptoms are related to the symptoms he exhibited during a medical appointment that took place over two years post-vaccination (*see* Pet. Ex. 7 at 1), petitioner was ordered to produce an expert report.  (ECF No. 36).

---

In addition, in petitioner's response to Respondent's Rule 4(c) report and Motion to Dismiss, petitioner states that he received the flu vaccine on October 15, 2014, thus the date of vaccination does not appear to be in dispute.

On March 19, 2018, petitioner filed an amended petition alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA") Table injury.[4]  (ECF No. 37).  Then, on October 9, 2018, petitioner filed his expert report.  Petitioner's Exhibit ("Pet. Ex.") 11.  In response, on May 9, 2019, respondent filed a Renewed Motion to Dismiss ("Renewed Motion") arguing that petitioner remained unable to fulfill the requirements of 42 U.S.C. § 300a-11(c)(1)(D) and that petitioner's claim must be dismissed.  (ECF No. 54).

Petitioner filed a response to the Renewed Motion ("petitioner's Second Response") on May 23, 2019.  (ECF No. 55).  In petitioner's Second Response, petitioner reasserted that he suffered the residual effects of his vaccine-related injury for more than six months and that his case is supported by medical records, affidavits, an expert opinion, and "common sense."  *Id.* at 3.

This order and fact-finding will address whether petitioner has satisfied the six-month severity requirement of the Vaccine Act.

## II.    Factual History

Petitioner was thirty years old when he received a flu vaccination in his right arm at a Walgreen's Pharmacy, in Ravenna, Ohio, on October 15, 2014. Petitioner's Exhibit ("Pet. Ex.") 4; Pet. Ex. 6.  His pre-vaccination medical history includes anxiety since childhood, depression, and substance abuse. *See generally* Pet. Ex. 2.

On November 6, 2014, three weeks and one day after vaccination, petitioner presented to AxessPointe complaining of "shoulder pain from shot" with "shooting pain/weakness/decreased [range of motion]" in his right deltoid.  Pet. Ex. 3 at 1. Petitioner reported to the nurse practitioner that the flu injection site was two fingerbreadths from the top of the shoulder, and his physician noted that petitioner received the vaccine at the proper injection site.  *Id.*  On exam, petitioner demonstrated normal active range of motion with no tenderness or induration with palpitation of the injection site.  *Id.*  Petitioner was assessed with unspecified myalgia and myositis of the right deltoid and instructed to follow up in one month if his pain continued.  *Id.* at 1-2.

On November 17, 2014, petitioner was seen at Robinson Memorial Hospital's General Adult Clinic, by Karen Barton, M.D., for "right lateral shoulder pain acute onset since flu vaccine 6 weeks ago."  Pet. Ex. 2 at 7.  Petitioner stated the pain occurred "within seconds of the injection," and he has since then experienced constant right shoulder pain without distal weakness or numbness.  *Id.*  He described the pain as "tolerable, aching, and tender."  *Id.*  A trial of naproxen and muscle relaxants did not help.  *Id.*  Petitioner was assessed with "right shoulder pain" and referred to physical therapy ("PT").  *Id* at 9.  No imaging was ordered.

---

[4] The revised Vaccine Injury Table, adding SIRVA as a Table injury, governs petitions filed under the Vaccine Act on or after March 21, 2017.  Because this claim was filed on May 19, 2016, petitioner must proceed on a causation-in-fact claim.  82 Fed. Reg. 6294 (Jan. 19, 2017) (to be codified at 42 C.F.R. pt. 100).

On November 21, 2014, petitioner had an initial PT assessment for right shoulder pain at Robinson Rehab Center & Sport Clinic. Pet. Ex. 1 at 4. Petitioner returned to PT on November 24, 2014 where he reported deep pain, with pain levels ranging from 4.5 to 9. *Id.* at 3. Pain was worse when lifting or performing activities of daily living. *Id.* Petitioner also attended PT on December 1, 2014 and on February 3, February 10, February 17, and March 3, 2015. Pet. Ex. 1 at 5, 7-9.

The records reflect that petitioner had his last PT session on March 24, 2015, at which time he reported that his shoulder had been getting stronger until the past weekend when his pain increased due to "sleeping wrong." Pet. Ex. 1 at 2. Petitioner's range of motion in the right shoulder was abnormal.[5] The physical therapist noted that PT would be put on hold until the petitioner saw the physician. Ex. 1 at 2, 10. Petitioner was discharged from PT on April 23, 2015. *Id.* at 10. In total, from November 21, 2014 until March 24, 2015, petitioner attended eight PT appointments and cancelled or was a "no show" for 11 appointments. *See generally* Pet. Ex. 1.

On December 21, 2016, petitioner presented at AxessPointe and was seen by Dr. Edward Scott. Pet. Ex. 7 at 1. He was diagnosed with shoulder tendonitis. *Id.* Although the record does not specify whether this malady was present in his left or right shoulder, it does reflect that petitioner was referred to PT to evaluate and treat for improved range of motion. *Id.* at 3. On January 26, 2017, petitioner was seen at University Hospitals Rehabilitation Services for PT, where his diagnosis was right shoulder tendonitis. Pet. Ex. 9 at 1. Petitioner reported having chronic right shoulder pain and weakness. *Id.* An examination noted decreased range of motion in the right shoulder. *Id.* at 2. Petitioner failed to show for his scheduled PT session on January 30, 2017. *Id.* at 4.

## III.   Affidavit Testimony Regarding Six Month Requirement

In petitioner's affidavit, filed on August 29, 2017, petitioner explained that he stopped going to PT in April 2015 because he thought Medicare[6] would limit the number of sessions he could have. Pet. Ex. 10 at 1-2. Petitioner "wanted to save those visits if pain and lack of motion became more serious." *Id.* Petitioner further explained that he "still suffered from pain and lack of motion from April 2015 until December 2016 when I

---

[5] Petitioner's range of motion ("ROM") in his right shoulder was assessed as: flexion 155°; abduction 128°; internal rotation 40°; and external rotation 55°. *Id.* at 2. Normal shoulder complex flexion ROM values for adults vary from about 165 to 180 degrees; normal shoulder complex abduction ROM values for adults vary from about 170 to 180 degrees; normal shoulder complex medial (internal) rotation ROM values for adults vary from about 70 to 90 degrees; and normal shoulder complex lateral (external) rotation ROM values for adults vary from about 90 to 100 degrees. CYNTHIA C. NORKIN & D. JOYCE WHITE, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY 72, 80, 84, 88, 5th ed. (2016).

[6] In petitioner's Second Response it is noted that "[t]he affidavit mistakenly states that [p]etitioner was on Medicare instead of Medicaid." Petitioner's Second Response at 1.

returned to physical therapy" and that he continued to experience the residual effects of his injury. *Id.* at 2.

## IV.   Petitioner's Expert Report

Petitioner submitted an expert report from Dr. G. Russell Huffman on October 9, 2018. Pet. Ex. 11. Dr. Huffman is a board-certified physician and serves as both the Director of the University of Pennsylvania Shoulder and Elbow Fellowship and as an Associate Professor of Orthopaedic Surgery at the Hospital of the University of Pennsylvania, University of Pennsylvania School of Medicine. Pet. Ex. 12 (Curriculum Vitae of Dr. Huffman). Dr. Huffman has expertise in shoulder injuries and has contributed to numerous publications on the subject. *Id.* at 11–18.

In his expert report, Dr. Huffman opined that "[petitioner's] injury fits within the established criteria for a SIRVA." Pet. Ex. 11 at 3. Specifically, Dr. Huffman determined that petitioner had no history of pain, inflammation or dysfunction of the affected shoulder prior to vaccine administration; that petitioner's pain occurred "within the specified time frame"; that petitioner's pain and reduced range of motion were limited to the shoulder in which the vaccine was administered; and that there is no other condition or abnormality present that would explain petitioner's symptoms. *Id.* at 3-4.

Additionally, Dr. Huffman opined "within a reasonable degree of medical certainty, [petitioner] documented a temporal association between the vaccination being administered and subsequent onset of right shoulder injury of lasting significant proportions." *Id.* at 4. He noted that PT records document "persistent pain and measurable functional limitations." *Id.* at 3. Dr. Huffman acknowledged that "[t]he history in this case is limited by a lapse in treatment after April 2015 and before December 2016", but ultimately determined "[b]y the records and by [petitioner's] affidavit, this appears to be related to [petitioner's] limited resources and his family responsibilities." *Id.* at 4.

## V.   Discussion

Under the Vaccine Act, a petition for compensation must contain "supporting documentation, demonstrating that the person who suffered [a vaccine related injury] ... suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." 42 U.S.C. § 300aa–11(c)(1)(D)(i). The burden is on the petitioner to establish, by a preponderance of the evidence, the persistence of a vaccine-caused injury for longer than six months. *Song v. Sec'y of Health & Human Servs.,* 31 Fed. Cl. 61, 65–66, *aff'd,* 41 F.3d 1520 (Fed.Cir.1994). However, dismissal is not appropriate if it appears the parties reasonably contest the length of time that petitioner has suffered from the effects of his alleged vaccine injury. *See, e.g., Faup v. Sec'y of Health & Human Servs.*, No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015).

Although a petitioner cannot establish the length or ongoing nature of an injury merely through his self-assertion, the fact that petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from his alleged injury. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014)(finding that petitioner suffered from residual symptoms that, due to their mild nature, did not require medical care). *See also Wright v. Sec'y of Health & Human Servs.*, No. 16-0498V, at 7 (Fed. Cl. Spec. Mstr. July 16, 2019)(explaining that in *H.S. v. Sec'y of Health & Human Servs.*, No. 14-1057V, 2005 WL 1588366 (Fed. Cl. Spec. Mstr. Mar. 13, 2015) and *Faup v. Sec'y of Health & Human Servs.*, No. 12-87V, 2015 WL 443802) (Fed. Cl. Spec. Mstr. Jan. 13, 2015) "the doctors' concern about the presence of a vaccine-injury, as evidenced by continuing physical restrictions and ongoing medication, were found to be residual effects of the injuries, even if the patient was asymptomatic at the time of these continuing effects.").

As noted in the March 8, 2018 Order, there appears to be no dispute that petitioner received the flu vaccine on October 15, 2014, and that he must show that his alleged injuries continued through at least April 15, 2015. *Herren*, 2014 WL 3889070, at *2; *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012)(dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset).

The medical records demonstrate that petitioner first sought treatment for shoulder pain on November 6, 2014:  three weeks and one day after vaccination.  Pet. Ex. 3 at 1.  Petitioner again reported shoulder pain on November 17, 2014 and promptly followed up with PT on November 21, 2014.  Pet. Ex. 2 at 7; Pet. Ex. 1 at 4.  Petitioner continued his PT, albeit sporadically, until March 24, 2015:  five months and nine days after vaccination.  Pet. Ex. 1 at 2.  The PT records during this timeframe indicate decreased range of motion and functional deficits.  *See generally* Pet. Ex. 1.

While there is a PT record dated April 23, 2015, it does not indicate that petitioner was present on this date and does not include an assessment of petitioner's condition.  Instead, it merely indicates that petitioner was to be discharged.

On December 21, 2016, petitioner again sought treatment for shoulder symptoms – specifically, shoulder tendonitis.  Pet. Ex. 7 at 3.  There was a considerable interval between petitioner's final PT session on March 24, 2015 and his December 21, 2016 medical appointment, thus, petitioner was ordered to file an expert report and affidavit addressing the lapse in care.

Petitioner's affidavit offers some corroboration of the claim that petitioner suffered from his injury for more than six months.  It also provides an explanation as to why petitioner stopped attending PT.  Based on a review of the records and affidavit testimony, Dr. Huffman opined that petitioner had "pain immediately upon administration

of the vaccination" and "experienced shoulder pain and limitations for a period exceeding 6 months." Pet. Ex. 11 at 3.

This case represents a "close-call" in terms of finding whether petitioner suffered the residual effects of his injuries for more than six-months. "In the Vaccine Program, petitioners are accorded the benefit of close calls." *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). However, what favors a ruling for petitioner is not just his affidavit, but also the unlikelihood that petitioner's shoulder symptoms would have resolved within 22 days, which is the amount of time between petitioner's last documented PT appointment on March 24, 2015[7] and April 15, 2015 (six months after petitioner's October 15, 2014 vaccination). Additionally, while there is some question regarding whether petitioner's shoulder tendonitis, as documented in a medical note from December 21, 2016, was a residual symptom of petitioner's vaccination, given Dr. Huffman's expert opinion, the undersigned finds that the totality of the evidence preponderates in petitioner's favor.

## VI.   Conclusion

Thus, the undersigned finds, based on the record as a whole, that petitioner has established that he suffered the residual effects of his vaccine-related injury for at least six months as required by the Vaccine Act. Therefore, Respondent's Motion to Dismiss is **DENIED.**

The parties are encouraged to consider an informal resolution of this claim. Petitioner shall file a joint status report by no later than **Friday, September 27, 2019**, updating the court on the status of parties' progress informally resolving this claim.

Any questions about this Order or claim shall be directed to OSM staff attorney, Francina Segbefia, at (202) 357-6358, or by email at: Francina_Segbefia@cfc.uscourts.gov.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[7] Notably, on March 24, 2015, the record suggests petitioner's pain had increased over the past weekend. Pet. Ex. 1 at 2.